# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION AT DAYTON

JULIE A. LEWIS                    :

      Plaintiff,              :
                                  Case No. 3:07CV00145

  vs.                               :

                           :        District Judge Thomas M. Rose

MICHAEL J. ASTRUE,                          Magistrate Judge Sharon L. Ovington
    Commissioner of the Social    :
    Security Administration,

                           :

      Defendant.

# REPORT AND RECOMMENDATIONS[1]

## I.      INTRODUCTION

Plaintiff Julie A. Lewis suffers various health problems, including herniated discs, pinched nerves, migraine headaches, left leg pain, right elbow pain, arthritis in the right knee, gall bladder attacks, ulcers, irritable bowel syndrome with constant diarrhea, and restless leg syndrome.  (Tr. 105-06).  In 1999, these problems began to interfere with her ability to work (Tr. 55), and she stopped working full time in May 2000. (Tr. 106). She then sought financial assistance from the Social Security Administration by applying for

---

[1] Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

Disability Insurance Benefits (DIB) on May 6, 2004, and by protectively filing for supplemental security income (SSI) on April 22, 2004.

After various administrative proceedings, including a hearing held on July 12, 2006 (*see* Tr. 301-322), Administrative Law Judge ["ALJ"] James I.K. Knapp denied Plaintiff's 2004 DIB and SSI applications based on his conclusion that Plaintiff's impairment did not constitute a "disability" within the meaning of the Social Security Act. (Tr. 22). The ALJ's non-disability determination and the resulting denial of benefits later became the final decision of the Social Security Administration. Such final decisions are subject to judicial review, *see* 42 U.S.C.§ 405(g), which Plaintiff now is due.

This case is before the Court upon Plaintiff's Statement of Errors (Doc. #6), the Commissioner's Memorandum in Opposition thereto (Doc. #8), Plaintiff's Motion for Remand (Doc. #7), the Commissioner's Response to Plaintiff's Motion for Remand (Doc. #10), Plaintiff's Reply thereto (Doc. #11), the administrative record, and the record as a whole.

Invoking Sentence 4 of 42 U.S.C. § 405(g), Plaintiff seeks an order reversing the ALJ's decision and granting Plaintiff benefits, or, at a minimum, a remand of this case to the Social Security Administration to correct certain alleged errors. (Doc. #6). She urges that the ALJ erred in holding that Plaintiff's back problems do not meet or equal Listing 1.04 (*id.* at 10-17), particularly in the absence of any physician's opinion in the record regarding that medical issue. (*Id.* at 16). Additionally, she argues that the ALJ's residual

2

functional capacity finding is not supported by substantial evidence.  (*Id.* at 17-20).  In opposition, the Commissioner asserts that substantial evidence supports both the ALJ's no Listing-level impairment and residual functional capacity findings.  (Doc. #8 at 8-15).

Plaintiff thereafter filed a motion requesting that the Court remand this case pursuant to Sentence 4 of 42 U.S.C. § 405(g), on the basis of "new and material evidence" demonstrating the need for "additional development" of her Listing 1.04 claim. (Doc. #7).  Defendant counters that remand based upon additional evidence is available under Sentence 6, not Sentence 4 (Doc. #10 at 2), but argues that Sentence 6 remand also is unwarranted under the circumstances herein presented, because the evidence is not material and Plaintiff has not shown good cause.  (*Id.* at 2-5).

In reply, Plaintiff continues to maintain that remand is appropriate pursuant to Sentence 4, but concedes that her motion "probably technically is a request for remand pursuant to [S]entence 6 because it concerns new and material evidence"  (Doc. #11, p. 1).  She then asserts why remand is warranted under Sentence 6.  (*Id.* at 2-5).

In light of both parties' arguments and the Court's reading of 42 U.S.C. § 405(g), the Court agrees that remand on the basis of new evidence as asserted by Plaintiff is not appropriate under Sentence 4, but will construe Plaintiff's remand motion as alternatively seeking remand under Sentence 6 of 42 U.S.C. §405(g) for administrative consideration of certain new and material evidence.


## II.	ADDITIONAL BACKGROUND

3

On the date of the ALJ's decision, Plaintiff's age (48) placed her in the category of a "younger person" for purposes of resolving her DIB and SSI applications. *See* 20 C.F.R. §§ 404.1563(c), 416.963(c).  (Doc. #8 at 2). She has a general equivalency degree ["GED"], equating to a high school education.  *See* 20 C.F.R. §§ 404.1564(b)(4); 416.964(b)(4).  (Tr. 111).  Plaintiff had worked as a meat wrapper, hand packager, punch press operator and commercial cleaner. (Tr. 67).

During the administrative hearing, Plaintiff testified that she has not driven a car on a regular basis in two years because it is too painful in her back and legs.  (Tr. 304-05). She delivered newspapers in 2001 and 2002, but no longer could do so by herself after losing a helper.  (Tr. 306).  She has had two back surgeries, in February 1997 and September 2004, and her back pain has increased since the second surgery.  (Tr. 307). She is in constant pain which shoots from her back into her left buttocks, down her leg, and into her foot.  (*Id.*).  Her medication does not stop the pain, but relaxes her enough so that she can lie down.  (*Id.*).

Plaintiff further testified that she has had two surgeries, in September 1999 and January 2001, on her right arm, which is so painful it feels as though it has been "through . . . a meat grinder."  (Tr. 308).  She testified that she no longer can use her hand, as she drops and breaks what she is holding or is unable to release her grip due to loss of control. (Tr. 309).  She cannot write more than a couple of lines at a time because of pain.  (Tr. 314).

Plaintiff testified that she suffers from arthritis in her right knee.  (Tr. 310).  She uses hot and cold packs and takes Vicodin, but that eases the pain only enough that she may lie down or sit in a recliner.  (Tr. 310).  If she is on her feet long enough to make a sandwich, her legs go numb and her feet swell.  (Tr. 315).  She describes her legs as "weak and shaky."  (Tr. 315).  Leg pain forces her to spend about six hours a day with her feet elevated.  (Tr. 316).

Plaintiff testified that she suffers from neck problems on a daily basis. (Tr. 309). She gets migraine headaches approximately twice a week and some days she cannot turn her head.  (*Id.*)  Medicine does not relieve the headaches.  (Tr. 309).  Sometimes she stays in bed all day, and must be in the dark.  (Tr. 314, 315).  Noise and the smell of food cooking affect her.  (Tr. 315).

She cannot bend over for more than a couple of minutes and can stand only for five to ten minutes before pain forces her to sit down.  (Tr. 311-313).  She can sit comfortably only for five minutes at a time and can lift only the weight of a half gallon of milk without pain.  (Tr. 314).

Turning to other evidence, the parties have provided detailed and informative descriptions of Plaintiff's medical records and other pertinent evidence.  (*See* Doc. #6 at 4-9; Doc. #8 at 2-5).  In light of this, and upon consideration of the administrative record, there is no need to fully reiterate or expand the parties' descriptions.  Still, describing a few medical source opinions will help frame further review.

Beyond Plaintiff's testimony and that of a vocational expert who testified regarding her knowledge of suitable jobs available in the regional economy (Tr. 316-320), the evidence presented at the hearing consisted entirely of exhibits. (*See* Tr. 303). Plaintiff's extensive set of medical evidence (Tr. 116-272) included records of hospitalizations and emergency room/outpatient visits (*see* Tr. 116-130, 136-159, 177-187, 197-212); records and reports from various primary care physicians and specialists who treated Plaintiff from 1996 through the date of the administrative hearing (*see* Tr. 131-135, 160-176, 213-224, 231-271); physical therapy records (Tr. 225-230); and the report of one consultative examiner, Dr. William D. Padamadan, a physician retained by the Ohio Bureau of Disability Determinations for the purpose of conducting a one-time evaluation of Plaintiff's medical condition. (Tr. 188-196).

The Commissioner relies heavily on that January 15, 2005, opinion of Dr. Padamadan. (*See* Tr. 20). At the time of Dr. Padamadan's examination, Plaintiff complained of low back pain, migraines and right tubercle tunnel syndrome, along with left leg and toe numbness. (Tr. 188). Examination revealed decreased strength of the left lower extremity and lack of sensation of touch and pinwheel on the back of the calf down to the heel and the sole of the foot, and from the dorsum of the foot from the ankle crease onwards. (Tr. 190). Plaintiff's neck and extremities showed normal range of motion. (Tr. 189-90). Dr. Padamadan found no muscle atrophy present, but noted slightly diminished range of motion in Plaintiff's lumbar spine. (Tr. 190). He diagnosed Plaintiff with low back pain and "unexplainable sensory deficits," along with "[n]on-specific

history of migraines." (Tr. 191).  Dr. Padamadan concluded that Plaintiff would be able to sit, stand and walk, and that her ability to reach, handle, and make fine and gross movements was intact.  (*Id.*).  He restricted Plaintiff from heavy lifting due to her history of back surgery, but said she should be able to carry five to ten pounds and occasionally lift twenty pounds. (*Id.*).

At the close of the administrative hearing, Plaintiff's counsel suggested to the ALJ that "it appears in this case there may be a meets or equaling of 1.04 based on the lumbar spine problems." (Tr. 321).  Counsel specifically directed the ALJ to the September 2004 report of Dr. Moncrief for evidence regarding weakness in Plaintiff's lower extremities, after which the ALJ proposed to "review the evidence in the record and the either make a decision or refer it out for further examination."  (*Id.*).  The ALJ thereafter issued his no-disability decision without seeking further expert medical evidence regarding the Listing 1.04 issue.  (Tr. 12-22).

In seeking remand, Plaintiff relies on the opinion of Dr. Richard M. Ward, a copy of which is attached to her Motion for Remand.  (Doc # 7, Ex. A).  Dr. Ward is a board certified orthopedic surgeon who previously was a medical consultant for the Social Security Administration.  In a letter dated May 31, 2007, Dr. Ward opines that Plaintiff meets Listing 1.04, as of September of 2003.  At the time of the evaluation, Dr. Ward stated that Plaintiff continued to have severe pain in the lower portion of her back, more severe on the left side.  The pain radiated into the posterior left thigh, calf and foot, with muscle spasms and stiffness.  Her symptoms are aggravated by bending, lifting, twisting,

7

sitting for longer than 10 minutes, standing in one position without moving for longer than 5 minutes and walking further than a half block. (Doc. # 7, Ex. A, p. 1). Dr. Ward further opined that Plaintiff's June 2006 MRI showed post-surgical changes at the L5-S1 level with bilateral foraminal stenosis and nerve root impingement on the left side.  He also found evidence of a nerve root impairment at the L5-S I level on the left side, and found that Plaintiff "had appropriate straight leg raising pain and evidence of neurologic deficit that would specifically meet listing 1.04 A."  Dr. Ward opined that Plaintiff has met this listing since November 2003, and that she will not improve in the future. (Doc. # 7, Ex. A, p. 2).

## III.    THE "DISABILITY" REQUIREMENT AND ADMINISTRATIVE REVIEW

The definition of the term "disability" is essentially the same for both DIB and SSI.  *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).  Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant (1) from performing his or her past job, and (2) from engaging in "substantial gainful activity" that is available in the regional or national economies.  *See Bowen*, 476 U.S. at 469-70 (1986).  A DIB/SSI applicant bears the ultimate burden of establishing that he or she is under a disability.  *See Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997); *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992); *see also Hephner v. Mathews*, 574 F.2d 359, 361 (6th Cir. 1978).

Social Security Regulations require ALJs to resolve a disability claim through a

five-step sequential evaluation of the evidence.  *See* 20 C.F.R.§§404.1520(a)(4), 416.920(a)(4).[2] Although a dispositive finding at any Step terminates the ALJ's review, *see also Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the evaluation answers five questions:

    1.      Is the claimant engaged in substantial gainful activity?

    2.      Does the claimant suffer from one or more severe impairments?

    3.      Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

    4.      Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

    5.      Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 416.920(a)(4); *see also Colvin*, 475 F.3d at 730; *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

In the present case, the ALJ made a Step1 finding that Plaintiff has not engaged in substantial gainful employment since April 3, 1999.  (Tr. 17).  He found at Step 2 that Plaintiff has a severe impairment of degenerative disc disease.  (*Id.*).  The ALJ determined at Step 3 that Plaintiff does not have an impairment or a combination of impairments that meet or equal one of the listed impairments.  (Tr. 19).  Elaborating on

---

[2] The remaining citations will identify the pertinent SSI Regulations with full knowledge of the corresponding DIB Regulations. Plaintiff met the insured-status requirement for DIB eligibility through December 31, 2005.  (Tr. 15).  *See Colvin*, 475 F.3d at 730.

that finding, he stated specifically as follows: "There is no evidence of nerve root

compression or other condition described in Listing 1.04.  Nor has there ever been any

evidence of loss of motor strength in the lower extremities."  (*Id.*).

At Step 4, the ALJ found that Plaintiff has the residual functional capacity to

perform a limited range of light work.[3]  The ALJ described his specific findings as

follows:

> . . . the claimant, for a period of twelve months or longer since
> the alleged disability onset date, has lacked the residual
> functional capacity to: (1) lift more than 10 pounds frequently
> or 20 pounds occasionally; (2) crawl or climb ladders and
> scaffolds; (3) do greater than occasional crouching, stooping,
> kneeling, or stair-climbing; (4) work at unprotected heights or
> around moving machinery; or, (5) do any job that would
> expose her to significant vibration.

(*Id.*).  This assessment, along with the ALJ's findings throughout his sequential

evaluation, led him ultimately to conclude that Plaintiff was not under a disability and

hence not eligible for DIB or SSI.  (Tr. 15-22).

## IV.    JUDICIAL REVIEW

Judicial review determines whether substantial evidence in the administrative

record supports the ALJ's factual findings.  *Bowen v. Comm'r. of Soc. Sec.*, 478 F.3d 742,

745-46 (6th Cir. 2007).  "Substantial evidence is defined as 'such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion.'"  *Bowen*, 478 F.3d at

---

[3]The Regulations define light work as involving the ability to lift "no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds . . . " 20 C.F.R. § 416.967(b).

746 (citing in part *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  It consists of "more than a scintilla of evidence but less than a preponderance . . ."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

Judicial review for substantial evidence is deferential, not *de novo*.  *See Cruse v. Comm'r of Soc. Sec.* 502 F.3d 532, 540 (6th Cir. 2007); *see also Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).  An ALJ's factual findings must be upheld "as long as they are supported by substantial evidence."  *Rogers*, 486 F.3d at 241 (citing *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999)).  Once substantial supporting evidence is found in the administrative record, courts do not consider whether they agree or disagree with the ALJ's findings or whether the administrative record contains contrary evidence.  *Rogers*, 486 F.3d at 241; *see Her*, 203 F.3d at 389-90.

Still, substantial evidence is not the analytical ending point.  Judicial review further considers whether the ALJ "applied the correct legal criteria."  *Bowen*, 478 F.3d at 746.  If the ALJ did not, the decision may not be upheld even if the findings are supported by substantial evidence.  *See id.*  For example, a decision will not be upheld where the ALJ failed to apply mandatory procedural rules and standards established by the Commissioner's Regulations and where that failure prejudices a claimant on the merits or deprives the claimant of a substantial right.  *See Bowen*, 478 F.3d at 746 (and cases cited therein).

## V.    DISCUSSION

### A.    The Parties' Contentions

Plaintiff argues in her Statement of Specific Errors and Motion for Remand that the ALJ erred in finding that Plaintiff does not meet or equal Listing 1.04.  Plaintiff urges that "[t]he ALJ's decision contains no discussion or explanation of an evaluation of her impairment under the Medical Listing of Impairments described in Appendix I, other than a terse, conclusory and unexplained 'finding' that she does not have an impairment or combination of impairments that meet the Listings."  (Doc. #7 at 2).  According to Plaintiff, the ALJ "simply skipped an important step in the sequential evaluation" by not obtaining a specialist examination or enlisting the aid of a medical expert regarding the issue of meeting or equaling Listing 1.04.  (*Id.*).  She further contends that the ALJ's residual functional capacity finding is not supported by substantial evidence because it relies on the "not credible" and "seriously outdated" report of Dr. Padamadan.  (*Id.* at 17).  She urges that the Commissioner's decision should be reversed or remanded for further hearing.

The Commissioner contends that the ALJ reasonably relied on Dr. Padamadan's opinion, and that substantial evidence supports both the ALJ's finding that Plaintiff did not have a Listing-level impairment and his residual functional capacity finding.  (Doc. #8).  He further argues that Dr. Ward's new opinion rendered since the date of the ALJ's and Appeals Council's decisions does not warrant remand.  (Doc. #10).

### B.    Remand under Sentence 6 of 42 U.S.C. §405(g)

Under Sentence 6 of 42 U.S.C. § 405(g), this Court may remand a case to the Social Security Administration "because new evidence has come to light that was not available to the claimant at the time of the administrative proceeding and that evidence might have changed the outcome of the prior proceeding." *Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991). The provision "was enacted, at least in part, to limit the discretion of federal judges to remand for reconsideration of new evidence." *Willis v. Sec'y of Health & Human Servs.*, 727 F.2d 551, 554 (6th Cir. 1984) (citations omitted). A Sentence-6 remand for consideration of additional evidence is warranted only if (1) there is good cause for the failure to incorporate this evidence into the record at the prior hearing, and (2) the evidence is new and material. 42 U.S.C. § 405(g); *see Melkonyan*, 501 U.S. at 89; *see also Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

Plaintiff – the party seeking a Sentence-6 remand in the present case – bears the burden of establishing these two remand requirements. *See Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 483 (6th Cir. 2006). To be "material," new evidence (1) must be relevant to and probative of an applicant's condition prior to the Commissioner's decision, and (2) must establish a reasonable probability that the Commissioner would have reached a different decision if the evidence had been considered. *Smith v. Comm'r of Soc. Sec.*, No. 1:07cv199, 2008 WL 2311561, at *6 (S.D. Ohio June 4, 2008)(Barrett, J.)(citing *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988); *Oliver v. Sec'y of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986)). New evidence is cumulative and not sufficient to warrant remand if

13

it relates to an issue already fully considered by the Commissioner. *Id.* (citing *Carroll v. Califano*, 619 F.2d 1157, 1162 (6th Cir. 1980)). Additionally, evidence that a plaintiff's health has deteriorated since the Commissioner's decision is not material to that application, and the appropriate remedy is a new application. *Id.* (citing *Sizemore*, 865 F.2d at 712).

Regarding "good cause," the Sixth Circuit "has taken a harder line" than some other circuit courts. *Oliver*, 804 F.2d at 966. In order to establish good cause in this Circuit, a plaintiff "must give a valid reason for his failure to obtain evidence prior to the hearing" for inclusion in the administrative record. *Id*. (citing *Willis*, 727 F.2d at 554). "Additional evidence generated for the purpose of attempting to prove disability in contrast to evidence produced by continued medical treatment does not meet the good cause requirement of the Act." *Powell v. Comm'r of Soc. Sec.*, No. 3:07cv074, 2008 WL 886134, at *9 (S.D. Ohio March 28, 2008) (Rice, J.) (citing *Koulizos v. Sec'y of Health & Human Servs.*, 802 F.2d 458 [table], 1986 WL 17488, at *2 (6th Cir. Aug. 19, 1986) ["The test . . . is that good cause is shown for remand if the new evidence arises from continued medical treatment of the condition, and was not generated merely for the purpose of attempting to prove disability."]).

Plaintiff contends that a Sentence-6 remand is warranted due to the new opinion of her examining physician, Dr. Ward, whose report is material to the issue of whether her back problems meet or equal Listing 1.04, the primary basis for Plaintiff's current action before this Court. (Doc. #11 at 5). The Commissioner opposes a Sentence-6 remand.

14

Observing that the ALJ could not have considered 2007 evidence in his 2006 decision, the Commissioner denies that the evidence is "material" to that decision. (Doc. # 10 at 3-4). He also urges that Plaintiff could have sought this new opinion in the three months between the hearing and the ALJ's decision, or during the five months between the ALJ's decision and the Appeals Council rendering it a final decision, and "has not suggested any good cause for failing to obtain and submit this medical evidence earlier." (*Id*. at 4-5).

Dr. Ward opines that Plaintiff's condition "would specifically meet listing 1.04," based upon "appropriate straight leg raising pain and evidence of neurologic deficit." (Doc. #7, Ex. A, p. 2). Defendant's contentions notwithstanding, such evidence clearly is material to the Listing 1.04 issue before the ALJ and the substance of Plaintiff's assigned error regarding that issue. Dr. Ward's report tends to support Plaintiff's subjective complaints about her daily struggles due to neck and back pain, and therefore is probative of her credibility, if not also her disability status. Although Plaintiff did not submit such evidence until after the Appeals Council had denied Plaintiff's request for review, and the evidence thus is not before this Court as to the merits of Plaintiff's disability claim, the Court nonetheless could consider it as a basis for remand. *See Cotton v. Sullivan*, 2 F.3d 692 (6th Cir. 1993); *see also Foster*, 279 F.3d 348.

Plaintiff faces a greater hurdle as to the "good cause" element of the Sentence-6 remand test. *See Melkonyan*, 501 U.S. at 89. Although Plaintiff counters the Commissioner's objections to the lateness of Dr. Ward's report with several examples of purported "good cause" for her delay (*see* Doc. #11), the principle obstacle to this Court's

consideration of that evidence is not Plaintiff's delay, but rather the nature of the evidence itself. Defendant's response to Plaintiff's motion for remand observes, "Given that Plaintiff saw Dr. Ward once for a consultative examination in May 2007, one must consider whether this new evidence did not stem from continued medical treatment but rather was obtained merely for the purpose of attempting to prove disability." (Doc. #10 at 4). Plaintiff's reply does not address that argument, apparently failing to recognize its significance. As Defendant's observation aptly implies, however, a medical opinion "generated merely for the purpose of attempting to prove disability" does not constitute "good cause" for remand under Sentence 6. *Koulizos*, 1986 WL 17488, at *2. Nothing in the record before us suggests that Plaintiff ever saw Dr. Ward for any purpose other than obtaining the opinion now offered as the basis for her remand motion. Indeed, Plaintiff's own motion for remand and reply both implicitly acknowledge that Plaintiff sought Dr. Ward's opinion specifically and solely for the purpose of proving disability. (*See* Doc. #7 at 5 ["it was not until after the ALJ's decision was issued that Plaintiff was aware of the need to obtain such an examination by a Social Security program physician on her own"]; Doc. #11 at 4-5 ["It was not until the Appeals Council's final decision that the Plaintiff was ultimately forced to seek out financial assistance from friends to pay for the examination by Dr. Ward"]).

    In light of the fact that Plaintiff's new material evidence consists of a medical opinion that apparently is not a product of her "continued medical treatment," but rather was "generated for the purpose of attempting to prove disability," this Court is

16

constrained to find that such evidence does not meet the "good cause" requirement of the Social Security Act.  *See Powell*, 2008 WL 886134, at *9.   Accordingly, Plaintiff's motion for remand on the basis of Dr. Ward's opinion (Doc. #7, Ex. A) must be denied.

**C.**      **Judicial Review of the ALJ's Decision**

Having concluded that remand is not appropriate on the basis of the new evidence proffered by Plaintiff, the Court next must consider whether the ALJ's decision withstands scrutiny under the test articulated in *Bowen*, 478 F.3d at 746.

Plaintiff urges that the ALJ's finding that she does not have an impairment that is the equivalent of Listing 1.04 is erroneous, due both to the ALJ's "factually incorrect and unsupported" conclusions (Doc. #6 at 15) and his failure to acquire a physician's opinion as to that issue.  She also challenges the ALJ's residual functional capacity finding as not supported by substantial evidence due to its reliance on the "not credible" and "seriously outdated" report of Dr. Padamadan.  (Doc. #6 at 17).   These arguments implicate both the "substantial evidence" and "correct legal criteria" prongs of *Bowen, supra*.

The regulations do provide that in making a medical equivalence determination, the Social Security Administration will "consider the opinion given by one or more medical or psychological consultants designated by the Commissioner."  20 C.F.R. § 404.1526(c).  Nevertheless, "[t]he burden of providing a . . . record . . . complete and detailed enough to enable the Secretary to make a disability determination[ ] rests with the claimant."  *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986).  "[T]he regulations do not require an ALJ to refer a claimant to a consultative

specialist, but simply grant him the authority to do so if the existing medical sources do not contain sufficient evidence to make a determination." *Id.* (citing 10 C.F.R. § 416.917(a)). Accordingly, "'full inquiry' does not require a consultative examination unless the record establishes that such an examination is *necessary* to enable the administrative law judge to make the disability decision." *Id.* (citation omitted) (emphasis in original).

Although a referral to a medical expert "might have been helpful here," Plaintiff has not met the requisite burden of establishing that such an examination was "*necessary"* in her case. *See Robinson v. Sullivan*, 337 F.2d 1087 [table], 1989 WL 119382, at *1 (6th Cir. Oct. 12, 1989). "A report is not necessarily incomplete simply because it does not provide the evidence sought by a claimant. Mere silence as to a medical condition has been insufficient for courts to find that the Secretary has abused his discretion in not ordering a consultative examination." *Brown v. Sec'y of Health & Human Servs.*, 911 F.2d 731 [table], 1990 WL 121472 at *5 (6th Cir. Aug. 22, 1990). The ALJ's discretion would seem to be particularly broad where, as here, the claimant did not raise the specific impairment until the hearing before the ALJ, *cf. Robinson*,1989 WL 119382, at *1, and none of the claimant's treating physicians prepared a written opinion or offered testimony to the effect that the claimant equaled that listing. *Cf. Fletcher v. Comm'r of Soc. Sec.*, 215 F.3d 1326 [table], 2000 WL 687658 (6th Cir. May 19, 2000). Because the exhibits submitted by Plaintiff contain no equivalence opinion from any treating physician, the only apparent reference to a 1.04 Listing appears in her counsel's

18

closing comments during the administrative hearing. (Tr. 321). Although Plaintiff "now contends that the Commissioner erred by not developing the record in this regard," Plaintiff and her counsel failed to place relevant evidence before the ALJ, "and it is the claimant's responsibility" to do so. *Stevens v. Apfel*, 165 F.3d 28 [table], 1998 WL 708728, at *2 (Sept. 29, 1998) (citing *Landsaw*, 803 F.2d at 214).

Moreover, consistent with Defendant's opposing argument, "[t]he signature of a State agency medical or psychological consultant on a . . . [Disability Determination and Transmittal Form] . . . ensures that consideration by a physician . . . designated by the Commissioner has been given to the question of medical equivalence at the initial and reconsideration levels of administrative review." *Hicks v. Comm'r of Soc. Sec.*, 105 Fed. Appx. 757, 762, 2004 WL 1687945, at *4 (6th Cir. July 27, 2004) (citing Soc. Sec. Rul. 96-6p, 61 Fed. Reg. 34,466, 34,468 (July 2, 1996)). Three Disability Determination and Transmittal Forms appearing in the current record each bear the signature of a qualified physician. (Tr. 28-30). Under existing law, that "professional input" is sufficient to satisfy 20 C.F.R. § 404.1526(b). *See id.* Under the deferential standard of review applicable to the ALJ's decision, the ALJ's no-impairment finding is not erroneous for failure to obtain a consultative examination of Plaintiff as to the Listing 1.04 issue.

There also is no apparent error in the ALJ's evaluation of the medical evidence. The medical evidence Plaintiff submitted took the form of treatment notes, forms and similar records rather than actual opinions of her treating physicians regarding her condition. (*See* Tr. 116-272). In the absence of any treating physician opinions, the ALJ

was justified in relying heavily on the consultative examination performed by Dr. Padamadan, who offered the only actual "opinion" appearing in the record.  (Tr. 188-196).  *See Wilson*, 378 F.3d at 544; *see also Peebles v. Chater*, 85 F.3d 629 [table], 1996 WL 229528 (6th Cir. May 6, 1996) ["in the absence of any evidence from treating physicians . . . the ALJ was required to rely on the reports of the consulting physician."].

Although Plaintiff dismisses Dr. Padamadan's opinion as not credible and outdated, the record illustrates that the ALJ <u>did</u> consider other medical evidence procured from Plaintiff's treating physicians, for treatments both before and after Dr. Padamadan's examination, and credited their findings.  (*See* Tr. 18-19, 20).  While acknowledging that Plaintiff continued to experience problems, and even underwent a second back surgery, <u>after</u> Dr. Padamadan had rendered his opinion (*id.*), the ALJ also noted that Plaintiff's post-surgery MRIs "show substantial medical improvement," and that Plaintiff "has had very little post-surgical treatment."  (Tr. 20).  He deemed Plaintiff's testimony regarding her limitations "disproportionate to the objective medical evidence," and found Plaintiff's subjective complaints "not credible to the extent that they purport to describe a condition of disability within the meaning of the Social Security Act and Regulations."  (*Id.*).  Such credibility determinations are entitled to deference, and the ALJ's other factual conclusions are supported by substantial evidence.  Accordingly, the ALJ's no-impairment and residual functional capacity findings are not erroneous when reviewed under the deferential standards applied by this Court.

20

## IT THEREFORE IS RECOMMENDED THAT:

1. The ALJ's decision and non-disability determination be AFFIRMED; and

2. The case be terminated on the docket of this Court.


August 6, 2008

                                              s/ Sharon L. Ovington
                                          Sharon L. Ovington
                                      United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by mail. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).